USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 07/14/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------X

DOMINIC DE MELLO,

Plaintiff,

-v-

FIRST UNUM LIFE INSURANCE COMPANY,

Defendant.

---------------------------------------------------------------------X

25-cv-7933 (LJL)

MEMORANDUM AND ORDER

LEWIS J. LIMAN, United States District Judge:

Plaintiff Dominic De Mello ("Plaintiff") moves, pursuant to Federal Rule of Civil Procedure 37(a)(1), for an order compelling Defendant First Unum Life Insurance Company ("Defendant") to respond to Plaintiff's interrogatories and requests for production of documents. Dkt. No. 20. Defendant opposes the motion. Dkt. No. 21. For the reasons that follow, the motion is denied.

Plaintiff is a participant in an employee welfare benefit plan (the "Plan"), as defined by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1002(1), sponsored by the law firm Schulte Roth & Zabel LLP. Dkt. No. 1 ¶¶ 3–5. The Plan offered long-term disability benefits to attorneys, including Plaintiff, through an insurance policy issued by Defendant. *Id.* ¶ 5. Defendant also was responsible for making decisions on claims under the Plan. *Id.*

Plaintiff contracted COVID-19 in December 2021 and has been diagnosed with long COVID. *Id.* ¶¶ 11, 13. Plaintiff submitted evidence to Defendant that he was disabled, *id.* ¶¶ 16–20, but Defendant has denied Plaintiff's claim for long-term disability benefits, *id.* ¶¶ 30–31. Defendant initially denied the claim based on the opinion of two doctors (Drs. Lyon and

Bright) who Plaintiff claims reviewed his file but never met with or spoke to him. *Id.* ¶ 21. In response to Plaintiff's internal appeal, Defendant obtained an additional file review from a third doctor (Dr. Greenstein) who Plaintiff claims rendered a report that was riddled with errors and demonstrated bias towards long COVID claims. *Id.* ¶ 23. On September 24, 2025, Plaintiff brought suit under Section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B), claiming that by denying Plaintiff's application for long-term disability benefits, Defendant has violated and continues to violate the terms of the Plan and Plaintiff's rights thereunder.

Plaintiff has propounded 21 interrogatories on Defendant. Dkt. No. 20-1. Interrogatories 11 and 18 ask for amounts Defendant paid Drs. Bright and Greenstein each year during a Relevant Time Period defined to be the time period from January 1, 2022 to December 31, 2024. *Id.* Interrogatories 10 and 17 ask for total annual amounts Defendant paid to any person with whom it contracted to obtain medical reviews from Drs. Bright and Greenstein. (In response to a separate interrogatory, interrogatory 9, Defendant identified Dane Street as the third party vendor whom it paid for the services of Drs. Bright and Greenstein during the Relevant Time Period. *Id.*). Interrogatories 6, 13 and 20 ask for the number of disability claims reviewed by each of Dr. Lyons, Dr. Bright, and Dr. Greenstein that Defendant denied or terminated within six months of that doctor's review. *Id.* Interrogatory 22 asks for the total number of disability benefit claims based on long COVID considered by Defendant during the Relevant Time Period and Interrogatory 23 asks for the number of long COVID claims that Defendant denied or terminated during the Relevant Time Period. *Id.*

Plaintiff made ten requests for production of documents. Dkt. No. 20-2. Request 1 asks for documents sufficient to establish whether and how Defendant provides financial incentives and disincentives to employees responsible for making disability claim determinations and

whether and in what amount any persons involved in the review or denial of Plaintiff's disability benefit claim received financial incentives, disincentives, or performance-based bonuses. *Id.* Request 10 asks for documents relating to "any financial analysis conducted by Unum of the value of Plaintiff's disability benefit claim." *Id.*

Defendant has produced documents setting forth the bases upon which the claims professionals may receive incentive compensation. *See* Dkt. No. 21 at 3; Dkt. No. 20 at 3 (Plaintiff statement that Defendant agreed to produce the Compensation Program Summary, Annual Incentive Plan, and PBI FAQ). Defendant represents that the programs do not incentivize claim outcomes. Dkt. No. 21 at 3. It also has agreed to produce the Dane Street invoices for work specific to Plaintiff's claim that were created or considered during the administration of his claim. *Id.*; Dkt. No. 20 at 2. Defendant states that the administrative record would include any financial analysis of Plaintiff's claim. Dkt. No. 21 at 3.

Defendant otherwise opposes Plaintiff's requests for extra-record discovery. It argues that Plaintiff has not shown a reasonable chance that the discovery will show that procedural defects or other case-specific irregularities adversely affected Plaintiff's claim. Dkt. No. 21 at 1. It also argues that interrogatories 6, 13, 20, 22 and 23 seek "batting average" information that, in and of itself, has no statistical value with respect to the question of alleged financial bias, would require manual review of all the claims files, and is disproportionate to the needs of the case. *Id.* at 1–2. It argues that Plaintiff has not satisfied the reasonable chance test for his request for information regarding economic incentives in interrogatories 10, 11, 17 and 18 and request for production 3, that Defendant does not have information about how much Dane Street paid Drs. Bright and Greenstein, and that information regarding how much Defendant paid Dane Street is meaningless in isolation. *Id.* at 2–3. Finally, in response to request for production 10, it argues

that this request demands reserve information, but that Defendant does not set or modify reserves on a claim-by-claim basis and that reserve information is not accessible to the individuals responsible for assessing whether to approve or deny a claim. *Id.* at 3.

The party seeking to compel discovery bears the initial burden of showing relevance. *In re OpenAI, Inc., Copyright Infringement Litig.*, 800 F. Supp. 3d 602, 607 (S.D.N.Y. 2025); *In re Subpoena to Loeb & Loeb LLP*, 2019 WL 2428704, at *4 (S.D.N.Y. June 11, 2019) (citing *Citizens Union of City v. Att'y Gen. of N.Y.*, 269 F. Supp. 3d 124, 139 (S.D.N.Y. 2017)). Moreover, "the discovery must be not only 'relevant to any party's claim or defense' but also 'proportional to the needs of the case.'" *N'Diaye v. Metro. Life Ins. Co.*, 2018 WL 2316335, at *7 (S.D.N.Y. May 8, 2018) (quoting Fed. R. Civ. P. 26(b)(1)).

"[W]hen reviewing claim denials, whether under the arbitrary and capricious or *de novo* standards of review, district courts typically limit their review to the administrative record before the plan at the time it denied the claim." *Halo v. Yale Health Plan, Dir. of Benefits & Recs. Yale Univ.*, 819 F.3d 42, 60 (2d Cir. 2016); *see also* Dkt. Nos. 14–15 (parties' proposed case management plan indicating that claims for benefits under ERISA "are typically decided on the administrative record before the plan administrator at the time it decided the claim"). The court may review additional evidence outside the record only upon a showing of good cause. *DeFelice v. Am. Int'l Life Assur. Co. of New York*, 112 F.3d 61, 67 (2d Cir. 1997). Here, Plaintiff's motion to compel seeks discovery into matters that are outside the administrative record.

Plaintiff's motion is predicated on the fact that Defendant operates under a conflict of interest because it both reviews and pays claims under the Plan. Dkt. No. 1 ¶ 5; Dkt. No. 20 at 1. A plan administrator operates under a conflict of interest when it "both evaluates claims for benefits and pays benefit claims." *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 112 (2008).

However, the "lion's share of ERISA plan claims denials" are made by administrators operating with such dual roles. *Id.* at 116; *see also id.* at 120 (Roberts, C.J., concurring in part and concurring in the judgment) ("The conflict of interest at issue here is a common feature of ERISA plans"). Accordingly, "a conflict of interest does not *per se* constitute 'good cause' to consider evidence outside of the administrative record upon a *de novo* review of factual issues bearing on an administrator's denial of ERISA benefits." *Locher v. Unum Life Ins. Co. of Am.*, 389 F.3d 288, 294 (2d Cir. 2004). Were the rule otherwise, there would be little left of the proposition that judicial review generally should be limited to the administrative record. In addition, "a *per se* rule would allow additional evidence to be presented at the district court level in almost every circumstance on the basis of a presumed conflict of interest[, . . .] eliminating the appropriate incentive for a claimant to submit all available evidence regarding the claimant's condition to the insurance company upon first submitting a claim." *Id.* at 295.

"[W]hile a structural conflict of interest does not *per se* constitute 'good cause' to consider evidence outside the administrative record, 'it can rise to the level of "good cause" when bolstered by specific allegations.'" *Biomed Pharms., Inc. v. Oxford Health Plans (N.Y.), Inc.*, 831 F. Supp. 2d 651, 658 (S.D.N.Y. 2011) (quoting *Puri v. Hartford Life & Accident Ins. Co.,* 784 F .Supp. 2d 103, 106 (D. Conn. 2011)). "That standard may be met where the Plaintiff demonstrates a conflict of interest 'as well as some additional factor, such as lack of established criteria for determining an appeal, a practice of destroying or discarding all records within minutes after hearing an appeal, or a failure to maintain written procedures for claim review.'" *Andrews v. Realogy Corp. Severance Pay Plan for Officers*, 2015 WL 736117, at *8 n.8 (S.D.N.Y. Feb. 20, 2015) (quoting *Pretty v. Prudential Ins. Co. of Am.,* 696 F. Supp. 2d 170, 183 (D. Conn. 2010)).

"The standard for *discovery* beyond the administrative record, however, is lower than good cause and for good reason." *Cohen v. CME Grp. Inc. Severance Plan*, 2022 WL 1720318, at *2 (S.D.N.Y. May 27, 2022) (quoting *Hughes v. Hartford Life & Accident Ins. Co.*, 507 F. Supp. 3d 384, 389 (D. Conn. 2020)). "If a plaintiff were forced to make a full good cause showing just to obtain discovery, then he would be faced with a vicious circle: To obtain discovery, he would need to make a showing that, in many cases, could be satisfied only with the help of discovery." *Anderson v. Sotheby's Inc. Severance Plan*, 2005 WL 6567123, at *6 (S.D.N.Y. May 13, 2005). "The Second Circuit has not provided district courts with a detailed framework for deciding disputes over the *discoverability* of extra-record evidence in ERISA cases." *Smith v. First Unum Life Ins.*, 2020 WL 6281451, at *4 (S.D.N.Y. Oct. 21, 2020) (emphasis in original). The majority rule requires the movant to "show a reasonable chance that the requested discovery will satisfy the good cause requirement." *Id.* (quoting *Anderson*, 2005 WL 6567123, at *7 ); *see also N'Diaye*, 2018 WL 2316335, at *6. Under that standard, the plaintiff must "make specific factual allegations to support the discovery request." *Capretta v. Prudential Ins. Co. of Am.*, 2017 WL 4012058, at * 6 (S.D.N.Y. Aug. 28, 2017) (quoting *Gosselin v. Sheet Metal Workers' Nat'l Pension Fund*, 2017 WL 3382070, at *5 (E.D.N.Y. Aug. 4, 2017)). Other district judges have eschewed any "special standard to govern ERISA cases as 'unwarranted,'" *Liyan He v. Cigna Life Ins. Co. of N.Y.*, 304 F.R.D. 186, 189 (S.D.N.Y. 2015) (quoting *Joyner v. Cont'l Casualty Co.,* 837 F. Supp. 2d 233, 242 (S.D.N.Y.2011)), and have applied the ordinary standards set forth in Federal Rule of Civil Procedure 26. But they still have held that, in deciding whether to grant discovery, courts must take into account the burden and expense of the proposed discovery as well as "the 'significant ERISA policy interests of

minimizing costs of claim disputes and ensuring prompt claims-resolution procedures.'" *Id.* (quoting *Locher,* 389 F.3d at 295).

"Moreover, 'courts distinguish between discovery relating to the conflict and discovery into the substantive merits of a claim, generally holding that the latter is impermissible in an ERISA case.'" *Cohen*, 2022 WL 1720318, at *2 (quoting *Hughes*, 507 F. Supp. 3d at 400 n.7). "Any extra-record discovery must be limited to the alleged conflict, not the merits of the plaintiff's claim." *Id.* at *3; *see also Smith*, 2020 WL 6281451, at *8.

The parties here agree that the appropriate standard is the "reasonable cause" standard applied by most courts in this Circuit. Dkt. No. 20 at 1; Dkt. No. 21 at 1. But, even if the Court were to apply the more general Rule 26(a)(1) standard, it would deny the motion to compel discovery. In the first instance, it is questionable whether plaintiff has identified any "additional factor" that would suggest that Defendant's structural conflict affected its consideration of Plaintiff's claim. Plaintiff points to disagreements with the opinions of the doctors upon whom the claims administrator relied. *See* Dkt. No. 20 at 1 (Defendant relied "on file reviewers without expertise in Long COVID"). Plaintiff alleges that Lyon is a family medicine doctor whose opinions have been rejected by multiple courts and that he mischaracterized the evidence and the nature of long COVID and discounted Plaintiff's self-reported symptoms without a reasonable basis. Dkt. No. 1 ¶ 21. He also alleges that Dr. Bright falsely asserted that Plaintiff's specialists had not proposed restrictions and limitations, and concluded without support that "ongoing management and treatment did not rise to a level that supports that the claimant was precluded from performing [his] occupational demands," *id.*, and that Dr. Greenstein opined that Plaintiff's self-reported symptoms were disproportionate to "clinically unremarkable" exams and tests, ignoring that (1) long COVID is a clinical diagnosis and most long COVID patients do not

have abnormal labs or scans, and (2) Plaintiff did, in fact, have abnormal test results supporting his subjective symptoms and ignored evidence that Plaintiff had symptoms of long COVID, *id.* ¶¶ 23–24.

Evidence that the plan administrator relied on evidence that is counter to the evidence submitted by the claimant cannot alone be sufficient to allow extra-record discovery. Although "couched in the language" of irregularities, the essence of Plaintiff's claim is that Defendant relied on the opinions of Drs. Lyon, Bright, and Greenstein and "disregarded other, more compelling evidence—in h[is] view—in the administrative record." *Choi v. Unum Life Ins. Co. of Am.*, 2025 WL 2234903, at *6 (D.N.J. Aug. 6, 2025). It is inherent in every challenge under ERISA to the denial of benefits that the claimant will disagree with the conclusions that the administrator drew from the record. If disagreement with a doctor's opinion alone was sufficient to justify discovery outside the administrative record, then a disappointed claimant could presumably obtain extra-record discovery in every case where the claims administrator is operating under a conflict of interest. *See id.*

In any event, Plaintiff has not shown how his requests are relevant and, if relevant, anything other than disproportionate to the needs of the case. Plaintiff's Interrogatories 11 and 18 ask for amounts Defendant paid Drs. Bright and Greenstein each year during the Relevant Time Period and Interrogatories 10 and 17 ask for total annual amounts Defendant paid to Dane Street. Defendant has provided Plaintiff the documents that set forth the bases upon which the claims professionals may receive incentive compensation and has agreed to provide the amounts that Defendant paid Dane Street for the claims at issue here. *See* Dkt. No. 21 at 3. Plaintiff does not identify any information from that discovery that would provide reasonable cause to believe that Defendant's claim decision was infected by a conflict of interest. Defendant does not have

the aggregate amount of compensation paid by Dane Street to Drs. Bright and Greenstein and represents, without contradiction, that it does not have access to that information. *Id.* at 2. Even if Defendant had the ability to request that Dane Street produce that information, Plaintiff has not represented how the aggregate compensation paid by Dane Street to the doctors over a three-year period would be relevant to Plaintiff's claim. The aggregate compensation presumably is a function of the number of claims that the doctors examined. In and of itself, it would say nothing about either doctor's dependance on work from Dane Street, much less whether the doctors would have had an incentive to bias their results in order to curry favor with Defendant. A similar point may be made with respect to the aggregate amount paid to Dane Street over a three-year period. Department of Labor regulations require Defendant to obtain medical advice from an appropriately credentialed physician with respect to the appeal of every claim that involves a medical question. 29 C.F.R. § 2560.503-1(h)(3)(iii). The amount that Defendant has paid Dane Street in the aggregate for such work says nothing in and of itself about whether Dane Street would have been motivated to skew the results reported by the doctors it retains in favor of denying a claim.

Interrogatories 6, 13 and 20 ask for the number of disability claims reviewed by each of Dr. Lyons, Dr. Bright, and Dr. Greenstein that Defendant denied or terminated within six months of that doctor's review. Interrogatory 22 asks for the total number of disability benefit claims based on long COVID considered by Defendant during the Relevant Time Period and Interrogatory 23 asks for the number of long COVID claims that Defendant denied or terminated during the Relevant Time Period. Each of those requests seeks information that goes far beyond what is proportional to the needs of this case. "[A] bare denial rate does 'not prove bias or conflict of interest,' because Plaintiff would also 'have to show that each of those decisions was

unreasonable based on the evidence in each file.'" *Smith*, 2020 WL 6281451, at *10 (quoting *Reichard v. United of Omaha Life Ins. Co.*, 805 Fed. App'x 111. 116 (3d Cir. 2020)). "[B]are numbers or percentages of claim denials are meaningless without additional context—and that context cannot be provided without holding mini-trials on the other claims." *Hughes*, 507 F. Supp.3d at 399; *accord Digeronimo v. Unum Life. Ins. Co. of Am.*, 2025 WL 2459557, at *5 (N.D. Ohio Aug. 27, 2025); *see also Ragin v. Sun Life Assurance Co. of Can.*, 2022 WL 2092971, at *1 (S.D.N.Y. June 10, 2022) (denying similar request because entirely generic in nature).

Finally, Plaintiff has not shown how the reserve information he requests is relevant. Defendant represents that reserves are not calculated on a claim-by-claim basis but based on statutory requirements, actuarial averages and historical experience. Dkt. No. 21 at 3. The reserve information thus does not speak to whether the result in Plaintiff's case was the product of bias. *See Joyner*, 837 F. Supp. 2d at 243–44 (denying request for discovery regarding reserves).

The Clerk of Court is respectfully directed to close the motion at Dkt. No. 20.

SO ORDERED.

Dated: July 14, 2026
New York, New York

LEWIS J. LIMAN
United States District Judge